David M. Goodrich
  *GoodrichTrustee@sulmeyerlaw.com*
Chapter 7 Trustee
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:16-bk-18751-BR |
| S & S REAL PROPERTY HOLDINGS, LLC, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:  (1) AUTHORIZING SALE OF 15521 7th STREET, VICTORVILLE, CALIFORNIA  92395, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; (2) APPROVING PROPOSED OVERBID PROCEDURES; (3) DETERMINING THAT BUYER IS A GOOD FAITH PURCHASER; (4) AUTHORIZING PAYMENT OF COSTS OF SALE FROM ESCROW; AND (5) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID M. GOODRICH, DEZHONG LI, AND JAN NEIMAN OF NEIMAN REALTY, INC. IN SUPPORT THEREOF** |
| | [11 U.S.C. §§ 363(b)(1), 365, 541]; Fed. R. Bankr. P. 6004 & 6006] |
| | DATE:   August 8, 2017<br>TIME:   10:00 a.m.<br>PLACE: Courtroom 1668<br>  United States Bankruptcy Court<br>  Roybal Federal Building<br>  255 East Temple Street<br>  Los Angeles, California  90012 |

ALS\ 2589277.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PROPOSED OVERBID PROCEDURES .................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................5

I. INTRODUCTION ................................................................................................................5

II. BACKGROUND .................................................................................................................5

    A.    Introductory Facts ................................................................................................5

    B.    The Property ..........................................................................................................5

III. THE SALE IS IN THE BEST INTEREST OF THE ESTATE ....................................6

    A.    Sound Business Purpose......................................................................................6

    B.    Reasonable Price ..................................................................................................7

    C.    The Sale and Distribution of Proceeds .............................................................7

    D.    Notice ....................................................................................................................8

    E.    Sale Made in Good Faith.....................................................................................8

    F.    Sale of the Property Free and Clear of Liens Under 11 U.S.C. § 363(f) .................9

    G.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order .....................11

    H.    Good Faith Purchaser Determination ...........................................................11

    I.    Tax Consequences ............................................................................................12

    J.    Marketing Efforts .............................................................................................12

IV. CONCLUSION ................................................................................................................12

DECLARATION OF DAVID M. GOODRICH ....................................................................14

DECLARATION OF DEZHONG LI ...................................................................................16

DECLARATION OF JAN NEIMAN ...................................................................................17

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*
5       722 F.2d 1063 (2d Cir. 1983)................................................................... 6

6 *In re Abbotts Dairies of Pennsylvania, Inc.*
      788 F.2d 143 (3rd Cir. 1986)............................................................... 11

7

*In re Continental Air Lines, Inc.*
8       780 F.2d 1223 (5th Cir. 1986)........................................................... 6, 7

9 *In re Ewell*
      958 F.2d 276 (9th Cir. 1992)............................................................... 11

10

*In re Gerwer*
11       898 F. 2d 730 (9th Cir. 1990)............................................................... 9

12 *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*
      77 B.R. 15 (Bankr. E.D. Pa. 1987)................................................... 8, 11

13

*In re Lahijani*
14       325 B.R. 282 (B.A.P. 9th Cir. 2005) .................................................... 7

15 *In re McCombs Properties VI, Ltd.*
      88 B.R. 261 (Bankr. C.D. Cal. 1988) .................................................. 10

16

*In re Shary*
17       152 B.R. 724 (Bankr. N.D. Ohio 1993) .............................................. 10

18 *In re Slates*
      2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) ............................. 6

19

*In re Suchy*
20       786 F.2d 900 (9th Cir. 1985)............................................................... 11

21 *In re Tabore, Inc.*
      175 B.R. 855 (Bankr. D. N.J. 1994)................................................... 10

22

*In re Terrace Gardens Park Partnership*
23       96 B.R. 707 (Bankr. W.D. Tex 1989) ................................................. 10

24 *In re Walter*
      83 B.R. 14 (B.A.P. 9th Cir. 1988) ..................................................... 6, 7

25

*In re Wilde Horse Enters., Inc.*
26       136 B.R. 830 (Bankr. C.D. Cal. 1991) ........................................... 6, 7, 8

27 *Romey v. Sun National Bank (In re Two "S" Corporation)*
      875 F. 2d 240 (9th Circ. 1989) ........................................................... 10

28

*Veltman v. Whetzal*
   93 F.3d 517 (8th Cir. 1996) ............................................................. 10


## STATUTES

11 U.S.C.
   § 102(1) .................................................................................... 6

11 U.S.C.
   § 363 ................................................................................... 6, 10

11 U.S.C.
   § 363(b) ................................................................................... 12

11 U.S.C.
   § 363(b)(1) ........................................................................... 6, 7, 8

11 U.S.C.
   § 363(f) .................................................................................... 9

11 U.S.C.
   § 363(f)(2) ............................................................................... 10

11 U.S.C.
   § 363(f)(3) ............................................................................. 9, 10

11 U.S.C.
   § 363(m) ............................................................................. 11, 12

11 U.S.C.
   § 506(a) ............................................................................... 9, 10


## RULES

Fed. R. Bank. P.
   Rule 6004(g) ............................................................................ 11

Fed. R. Bank. P.
   Rule 6004(h) ............................................................................ 11

1  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE;**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR AND ITS**

3  **COUNSEL AND ALL OTHER INTERESTED PARTIES**:

4      David M. Goodrich, the duly appointed and acting Chapter 7 trustee ("Trustee") of the

5  bankruptcy estate ("Estate") of S & S Real Property Holdings, LLC ("Debtor"), seeks an order: *(1)*

6  *Authorizing Sale Of 15521 7th Street, Victorville, California  92395, Free And Clear Of Liens,*

7  *Claims, And Interests; (2) Approving Proposed Overbid Procedures; (3) Determining That Buyer*

8  *Is A Good Faith Purchaser; (4) Authorizing Payment Of Costs Of Sale From Escrow; And (5)*

9  *Waiving The Fourteen (14) Day Stay Prescribed By Rule 6004(h) Of The Federal Rules Of*

10  *Bankruptcy Procedure; Memorandum Of Points And Authorities; Declarations Of David M.*

11  *Goodrich, Dezhong Li And Jan Neiman of Neiman Realty, Inc. In Support Thereof* ("Motion") and

12  respectfully represents as follows:

13      Through the Motion, the Trustee seeks an order approving the proposed sale of the Estate's

14  right, title and interest in commercial real property located at 15521 7th Street, Victorville,

15  California  92395 ("Property"), on the terms and conditions stated in the *Commercial Property*

16  *Purchase Agreement And Joint Escrow Instructions (Non-Residential)* and *Seller Counter Offer*

17  *No. 1* (collectively referred to herein as "Purchase Agreement"), attached hereto as **Exhibit 1** to

18  Dezhong Li ("Buyer"), or any overbidder, for $113,000.00.[1]

19      The Trustee seeks an order approving the proposed sale free and clear of aliens, claims,

20  and interests, with only those liens identified in this Motion attaching to the sales proceeds in the

21  same manner and priority as under applicable law.  The Property is being sold on an "as is, where

22  is" basis, with no warranties, recourse, contingencies, or representations of any kind.

23      The Trustee also seeks an order (i) approving the Trustee's proposed overbid procedures;

24  (ii) determining that the Buyer or the successful bidder is entitled to 11 U.S.C. § 363(m)

25

26  _____

27  [1] The Buyer has also waived all contingencies, which have been included as a term of the Purchase
Agreement.

28

ALS\ 2589277.1

protection; (iii) authorizing payment of costs of sale from escrow, and (iv) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

### PROPOSED OVERBID PROCEDURES

The proposed sale to the Buyer is subject to approval of the United States Bankruptcy Court and to qualified overbids.  The Buyer has offered to purchase the Property for $113,000 ("Purchase Price"), $5,000.00 of which has been tendered, with the balance to be paid within fourteen (14) calendar days following entry of the order approving the sale of the Property.  As noted above, however, the sale of the Property is subject to overbid pursuant to the following proposed overbid procedures ("Overbid Procedures"):

### 1.    Intent To Bid And Overbid Amount

Any party wishing to bid on the Property ("Overbidder") shall advise the Trustee of their intent to bid on the Property and the amount of their overbid (which must be at least $5,000.00 more than the current selling price of $113,000) ("Initial Overbid"), by no later than 12:00 p.m., two business days before the sale hearing ("Overbid Deadline").  In his absolute and sole discretion, the Trustee shall have the right to accept additional overbids submitted prior to the hearing but after the Overbid Deadline.  Any Overbids subsequent to the Initial Overbid of $118,000.00 will be in additional increments of not less than $2,000.00, commencing with the bid amount of $120,000.00.

### 2.    Payment Of Deposit

Any Overbidder shall provide the Trustee with a cashier's check, payable to "David M. Goodrich, Chapter 7 Trustee of the Bankruptcy Estate of S & S Real Property Holdings, LLC" in the amount of $5,000.00 ("Deposit").  The Deposit must be delivered so that it is received by the Trustee (whose name and address is set forth on the upper left corner of the first page of this Motion) by no later than the Overbid Deadline.

In the event of any Overbid, the $5,000.00 deposit from the Buyer or successful Overbidder shall serve as the Deposit for the Buyer or any successful Overbidder.  The party that is not deemed the "Winning Bidder," at that phrase is defined below, shall have their deposit refunded to them.

### 3.    Evidence Of Financial Ability To Perform

Any Overbidder must provide the Trustee with evidence of the proposed Overbidder's financial ability to pay the full amount of the Overbid so that such evidence is received by the Trustee no later than the Overbid Deadline.

### 4.    Auction

All parties who have submitted timely bids and otherwise satisfied the foregoing requirements will be able to participate in an auction to be conducted at the hearing on the Motion as is necessary in order to increase their bid.  As stated previously, the Initial Overbid will be in the amount of $118,000.00 and any subsequent overbids will be in increments of $2,000.00.

The Trustee seeks authority to sell the Property to the bidder with the highest Overbid ("Winning Bidder"), and for authority to sell the Property to the next highest bidder if the Winning Bidder fails to perform.  To be considered the "highest overbid," any overbid must be on the same terms and conditions of the Purchase Agreement.

### 5.    Tender Of Balance Of Purchase Price

The Winning Bidder's Deposit shall be applied towards the total purchase price.  The Winning Bidder must tender the balance of the total purchase price to the Trustee via cashier's check within fourteen (14) calendar days following entry of the order approving the sale of the Property to such buyer.  To the extent the Winning Bidder fails to tender the balance of the purchase price by such date, that bidder's entire Deposit shall be non-refundable and forfeited to the Trustee.

### 6.    Agreement To Terms And Overbid Procedures

Any Overbidder's tender of the Deposit to the Trustee shall serve as that Overbidder's agreement with these proposed overbid procedures and the terms of sale of the Property discussed herein.

This Motion is made pursuant to 11 U.S.C. §§ 363(b)(1) and 365, and Federal Rules of Bankruptcy Procedure 6004 and 6006 on the grounds that, based on the Trustee's sound business justification, the Trustee believes the sale of the Property as set forth herein is in the best interests of the Estate.  After solicitation of offers for the Property over the past few months, the current

offer from the Buyer is the best offer received to date.  Moreover, the Overbid Procedures may result in a higher purchase price being obtained by the Estate.

This Motion is based on the accompanying Memorandum of Points and Authorities, Declarations Of David M. Goodrich, Dezhong Li, and Jan Neiman of Neiman Realty, Inc., the concurrently-filed Local Rule Form 6004-2, the record in this case, all facts and documents that are judicially noticeable and any other or further evidence or argument presented to the Court prior to or at the hearing on the Motion.

**WHEREFORE,** the Trustee respectfully requests that the Court enter an order (i) authorizing the sale to the Buyer or to the highest bidder appearing at the hearing; (ii) approving the Trustee's proposed overbid procedures; (iii) authorizing the Trustee to pay all costs of sale from escrow, (iv) determining that the Buyer or the successful bidder is entitled to 11 U.S.C. § 363(m) protection; (v) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and (vi) providing such other and further relief as is proper.

DATED: July 10, 2017                              Respectfully submitted,


                                                  */s/ David M. Goodrich*
                                                  David M. Goodrich
                                                  Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Trustee seeks an order approving the sale of the Estate's right, title, and interest in the Property.  The Trustee has retained a broker to market and sell the Property.  This Motion to sell the Property is a result of such efforts, as will be demonstrated below and in the Declaration of Jan Neiman of Neiman Realty, Inc. ("Neiman Declaration").

The Trustee submits that the price obtained for the Property is its fair market value and that the sale is in the best interests of the Estate.  The Trustee believes all prerequisites for approval of the sale under applicable provisions of the Bankruptcy Code have been satisfied and he therefore urges the Court to grant the Motion.

### II.

### BACKGROUND

#### A.    Introductory Facts

On June 20, 2016, the Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1.  David M. Goodrich was appointed as Chapter 7 Trustee.  *See* Docket No. 4.  At the time of the bankruptcy filing, the Debtor owned the Property.  The Debtor has scheduled secured debt asserted against the Property in the amount of $78,642.71.  *See* Docket No. 1, Schedule D.  The secured creditor has filed a proof of claim disclosing a secured amount due of $81,067.02.  *See* Claim No. 2.  Further, the County of San Bernardino claims to hold a lien in the amount of $15,258.47.  *See* Claim No. 1.  There is no claim of exemption asserted against the Property and nor can there be – this is a corporate debtor.

#### B.    The Property

Prior to the Petition Date, the Debtor acquired the Property.  The Property is listed on the Debtor's Schedule A filed herein and, as a result, the Debtor admits it owned the Property on the petition date.  The Property is an asset of the Estate.

The Trustee now wishes to sell the Property for the price of $113,000, subject to overbid, which will result in the realization of equity for the benefit of the Estate and its creditors.

In summary:

1.     The Property will be sold to the Buyer free and clear of all liens, claims, and encumbrances for the total purchase price of $113,000.00 or to any person or entity who is an accepted Overbidder and the eventual Winning Bidder;

2.     The approved broker's commission, past due and current real property taxes, and the fees and costs of the sale chargeable to the Estate will be paid from the sale proceeds; and

3.     The Trustee shall receive 100% of the net sales proceeds.

The Trustee avers that the sale of the Property, based upon the terms and conditions described herein, will benefit the Estate and its creditors.

## III.

## THE SALE IS IN THE BEST INTEREST OF THE ESTATE

Under § 363, a trustee is empowered to sell assets of the estate "after notice and a hearing." 11 U.S.C. § 102(1).  The standards for approval of a sale pursuant to § 363(b)(1) require that the proponent of the sale establish that: "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, *i.e.*, the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." *In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983)).  As discussed more fully below, the Trustee's proposed sale of the Property meets each of these requirements.

### A.     Sound Business Purpose

The decision to sell property out of the ordinary course of a debtor's business must be based on the reasonable business judgment of the debtor.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983).  In determining whether the business purpose is justified under § 363(b)(1), bankruptcy courts apply a flexible, case-by-case approach. *See In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) ("the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.") (quoting *In*

*re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986)).  The court should approve a sale of property under § 363(b)(1) if the trustee has established a sound business purpose for the proposed transaction. *In re Walter*, 83 B.R. 14, 16 (9th Cir. BAP 1988); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991).  The business judgment standard is deferential. *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection.").

The facts reflect that the Trustee's decision to sell the Property is supported by sound business judgment because the price is fair and the sale will generate significant cash proceeds for the Estate.  Namely, the sale will net approximately $6,981.56 to the Estate for payment of claims, possibly more.[2]

### B.    Reasonable Price

The price is fair, reasonable, and it conforms with the current market of comparable sales. The price reflects extensive marketing efforts of the Property, listing prices of comparable parcels of real property, and the Broker's inspection of the Property.  The Buyer's offer of $113,000.00 is the best offer that the Trustee has received for the Property. As a result, the price is reasonable and in the best interests of the Estate.

### C.    The Sale and Distribution of Proceeds

Subject to Court approval, the Trustee seeks approval for a sale of the Property to the Buyer, or any successful Overbidder, free and clear of all liens, claims, and encumbrances.  As part of the approval of the sale of the Property, the Trustee also seeks authority to pay certain costs of sale, accrued real property taxes and any capital gains taxes upon the close of escrow on the sale.  A summary of the sale with deductions for all costs and payments to third parties is a follows:

---

[2] The Trustee is negotiating a reduction of the first trust deed holder's secured claim and is hopeful that the balance owed will be reduced.

| Description | Amount |
|---|---|
| Sale Price | $113,000.00 |
| Broker's Commissions (6% of the purchase price) | ($6,780.00) |
| Martin Murillo:  Holder of the First Deed of Trust | ($81,067.02) |
| Delinquent, Secured Property Taxes | ($15,258.47) |
| Pro-rated Current Secured Property Taxes | ($207.05) |
| Additional Charges (including Closing Fee, Tax Certificate, Courier Fee and Deed) | ($2,705.90) |
| **Estimated Net Proceeds available to pay allowed administrative and unsecured claims** | $6,981.56 |

### D.    Notice

The Trustee must give notice of any sale of property of the estate.  11 U.S.C. § 363(b)(1). In the instant matter, the Trustee will give notice to Debtor, the United States Trustee, all known creditors, and any other prospective buyers.  Service of the Motion is proper and constitutes adequate and reasonable notice.  Moreover, notice of the sale of the Property and bidding procedures will be published on the website for the United States Bankruptcy Court for the Central District of California.

### E.    Sale Made in Good Faith

"Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation marks omitted).  Bad faith includes collusion between buyer and seller or otherwise taking unfair advantage of other potential purchasers, such as a collusive insider transaction.; *id.*; *see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

The sale of the Property was negotiated at arms' length.  There is no fraud, collusion, or insider transactions present here, and the Buyer received no special treatment or consideration. Moreover, the Property has been actively marketed, the sale will be properly publicized on the

1  Bankruptcy Court's website, and the Trustee has accepted the highest and best offer. As a result,

2  the sale is made in good faith.

3  **F.    Sale of the Property Free and Clear of Liens Under 11 U.S.C. § 363(f)**

4  The Trustee seeks authority to complete the sale free and clear of all liens, claims, and

5  interests. § 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any

6  interest in such property of an entity," if any one of the following five conditions is met:

> (1)    Applicable non-bankruptcy law permits a sale of such property free and clear of such interest;
>
> (2)    Such entity consents;
>
> (3)    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    Such interest is in bona fide dispute; or
>
> (5)    Such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

14  11 U.S.C. § 363(f)

15  Section 363(f) is written in the disjunctive, such that satisfaction of any one of the five

16  conditions is sufficient to allow a debtor in possession to sell property of the estate free and clear

17  of liens. *In re Gerwer*, 898 F. 2d 730 (9th Cir. 1990).  In the instant matter, the Trustee has

18  satisfied at least two of the above five conditions and should be permitted to sell the assets free

19  and clear of liens with such liens transferring to proceeds.

20  First, in the event of an objection to the instant motion, the proposed sale may also proceed

21  free and clear of liens under § 363(f)(3).  Under this subsection, a Trustee may sell property of the

22  estate only if the price at which such property is sold is greater than the aggregate "value" of all

23  liens on such property.  11 U.S.C. § 363(f)(3).  A party asserting a lien on property of the estate is

24  "secured" only to extent of the value of the property on which its lien, claim or interest is fixed,

25  and the balance of any such lien, claim of interest is "unsecured."  Bankruptcy Code § 506(a)

26  limits the secured status of a creditor's claim to the lesser of the allowed amount of the claim or

27  the value of the collateral. *In re McCombs Properties VI, Ltd.,* 88 B.R. 261, 266 (Bankr. C.D. Cal.

1988)*.  Accordingly, any creditor claiming an interest in property of the estate to be sold holds a

security interest only up to the fair market value of the property itself.  When the proposed sale

price represents the highest price available for the assets, then the sale free and clear of liens may

be approved under Code § 363(f)(3).  *Romey v. Sun National Bank (In re Two "S" Corporation)*,

875 F. 2d 240, 243 (9th Circ. 1989) (holding that best evidence of value is the price reached in a

commercially reasonable sale).  In other words, the proposed sale will, by definition, realize the

full economic value of the secured creditors' interests in the property since claims are only

allowed as secured claims under §506(a) to the extent there is equity in the creditors' collateral.  *In

re Terrace Gardens Park Partnership,* 96 B.R. 707 (Bankr. W.D. Tex 1989).

Furthermore, the Trustee intends to notify all interested parties through the notice of

motion.  Any party objecting to such sale may file their objection with the Court and be heard at

the hearing on the Motion.  If there is no objection, the parties will be deemed to have consented

to the sale of the Property.  *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996) (failure to object

to proposed sale, coupled with agreement authorizing sale free of interest, constituted consent);

*Elliot, supra* (implied consent found)*; In re Tabore, Inc.,* 175 B.R. 855 (Bankr. D. N.J. 1994)

(failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363);

*In re Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor

license constituted consent to sale).  Thus, pursuant to § 363(f)(2), the Trustee may sell the

Property free and clear of any interest of entities other than the bankruptcy estate because the

noticed parties will be deemed to have consented to the sale of the Property if they make no

objections to the Sale.

Finally, the Trustee will pay all liens in full from the sale, unless one or more lien holder

consents to a sale with less than full payment of their lien made from the sale proceeds.  As such,

the Property may be sold free and clear of all liens under §§ 363(f)(2) and (3).

Bankruptcy Code § 363(f)(3) and (4) are satisfied and the Property may be sold free and

clear of all liens, claims and interests.  If a lien claimant objects to the proposed sale, the Trustee

believes consent to the sale will be obtained and the Property may be sold free and clear of all

liens, claims and interests pursuant to §363(f)(2).

### G.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004 provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court.  Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Given the notice and full opportunity to object, respond, or participate in Overbid Procedures presented by this Motion, the Trustee believes that, unless there are objections to the Motion that are not consensually resolved, it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property may be sold immediately. Accordingly, the Trustee requests that the Court authorize the sale to be effectuated immediately upon entry of the order approving this Motion.

### H.    Good Faith Purchaser Determination

The proposed Buyer is a good faith purchaser entitled to the protections of § 363(m). "Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.'" *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986).  Lack of good faith may be shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (*quoting In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); *see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction").

ALS\ 2589277.1

In this case, the proposed sale is not predicated on fraud or collusion, and the sale is not to an insider, nor have any insiders received any special treatment or consideration. *See* Declarations of David M. Goodrich and Dezhong Li. Based upon the foregoing, the Trustee submits that the Motion satisfies the standards for approval of a sale of the Property outside of the ordinary course of business pursuant to § 363(b), and good cause exists to make a finding that the Buyer or any overbidder is purchasing the Property in "good faith" pursuant to § 363(m).

**I.    Tax Consequences**

It is anticipated that there will be no tax liability (including capital gains) generated from the sale of the Property.

**J.    Marketing Efforts**

As detailed in the Declaration of Jan Neiman of Neiman Realty, Inc., filed herewith, the Property was listed on 2 real property websites. The Property was shown 12 times to prospective buyers and Ms. Neiman received 25 inquiries. The Trustee believes the Property was properly marketed. *See* Declaration of Jan Neiman.

**IV.**

**CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Court enter an order that provides that:

1.    The Motion is granted;

2.    The Trustee is authorized to enter into the Purchase Agreement;

3.    The Trustee is authorized to sell the Property outside the ordinary course of business;

4.    The Trustee is authorized to sell free and clear of all liens;

5.    The Trustee is authorized to sign all documents necessary to consummate the sale and close escrow, including, but not limited to, any grant deed and escrow instructions;

6.    The Trustee is authorized to pay the costs of sale;

7.    The Trustee is authorized to pay all liens;

8.    The Trustee is authorized to pay the commission of $6,780.00 to the Broker;

9.    Dezhong Li, or any successful overbidder, is entitled to the protections set forth in 11 U.S.C. § 363(m) as a good faith purchaser;

10.    The 14 day stay regarding the effectiveness of the order shall be waived; and

11.    Such other further relief as the Court may deem just and proper.

DATED: July 10, 2017

By:    */s/ David M. Goodrich*
       David M. Goodrich
       Chapter 7 Trustee

# DECLARATION OF DAVID M. GOODRICH

**DECLARATION OF DAVID M. GOODRICH**

I, David M. Goodrich, declare:

1.      I am the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate ("Estate") of the debtor S & S Real Property Holdings, LLC ("Debtor").

2.      I am an individual over the age of eighteen, and I am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate of the Debtor.

3.      Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

4.      Prior to the Petition Date, the Debtor acquired real property located at 15521 7th Street, Victorville, California  92395.

5.      On or about May 28, 2017, Dezhong Li ("Buyer") submitted the Purchase Contract whereby the Buyer has agreed to buy the Property for the sum of $113,000.00, on the terms and conditions stated in the written offer titled *Commercial Property Purchase Agreement And Joint Escrow Instructions (Non-Residential)* and *Seller Counter Offer No. 1* (collectively referred to herein as "Purchase Agreement"), attached hereto as **Exhibit 1**.  The Buyer's offer is the highest offer that I have received.

6.      To the best of my knowledge, I do not have any connection or relationship with the Buyer.  Further, the Buyer has no connection to the Debtor.

7.      I believe the sale will generate approximately $6,981.56 of net proceeds for the Estate.  I am currently negotiating a reduction to the first deed of trust holder's lien and hope to increase the net sale proceeds to $10,000 for the Estate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8.      I believe that it is in the best interest of the Estate to proceed with the sale to the Buyer, subject to overbid, for the sum of $113,000.00.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of July, 2017, at Los Angeles, California.


_/s/ David M. Goodrich_
David M. Goodrich
Chapter 7 Trustee

# DECLARATION OF DEZHONG LI

## DECLARATION OF DEZHONG LI

1    I, Dezhong Li, declare and state as follows:

2    1.    I am over the age of eighteen.  I have personal knowledge of the information

3 contained herein and if called upon to testify, I could and would competently testify thereto.

4    2.    I am the proposed buyer for the real property located at and commonly known as

5 15521 7th Street, Victorville, California 92395.

6    3.    To the best of my knowledge, I do not have any relation to the Chapter 7 Trustee

7 David M. Goodrich, his agents and employees, or any judge of the United States Bankruptcy

8 Court for the Central District of California, the United States Trustee, or any person currently

9 employed in the Office of the United States Trustee.

10    4.    The price I have agreed to pay the Trustee was reached during an arms-length

11 negotiation with the Trustee through his agents.

12    I declare under penalty of perjury under the laws of the United States of America and the

13 State of California that the foregoing is true and correct.

14    Executed on June 30, 2017 at Rosemead, California.

Dezhong Li
_____
Dezhong Li

**DECLARATION OF JAN NEIMAN**

## DECLARATION OF JAN NEIMAN

I, Jan Neiman, declare as follows:

1.    I am an individual over the age of eighteen, and I am a licensed real estate agent with Neiman Realty, Inc., a licensed real estate broker.

2.    The Trustee contacted me and the Firm to assist him in selling the real property located at and commonly known 15521 7th Street, Victorville, California  92395("Property").

3.    The Property was initially listed at a price of $125,000.00.  We have marketed and exposed the listing to other brokers and potential buyers through the following: Loopnet Commercial and SRAR MLS Commercial Real Estate.

4.    Twelve potential buyers have toured the Property.  I have also communicated with approximately 25 other parties who made inquiries regarding the Property through telephone calls from signs, internet inquiries, and view advertising calls.

5.    Based upon my research and opinion of value, I believe $113,000.00 represents a fair value for this Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7 day of June, 2017, at Van Nuys, California.

Jan Neiman

# EXHIBIT 1



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER COUNTER OFFER No. 1**
May not be used as a multiple counter offer.
(C.A.R. Form SCO, 11/14)

Date *June 23, 2017*

This is a counter offer to the: X Purchase Agreement, Buyer Counter Offer No. , or Other ("Offer").
dated *May 28, 2017* , on property known as *15521 7th Street, Victorville,* ("Property").
between ("Buyer")
and *David M. Goodrich, Chapter 7 Trustee for the Estate: S&S Real Property Holdings* ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.

   C. **OTHER TERMS:** *Price: $113,000.00*

   *7B. (1) Buyer*

   *Omit #26*

   D. The following attached addenda are incorporated into this Seller Counter offer: Addendum No. *1*

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 4 (if more than one signature then, the last signature date)(or by AM PM on (date)) (i) it is signed in paragraph 5 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or , who is authorized to receive it.
   OR B. If Seller withdraws it anytime prior to Acceptance (CAR Form WOO may be used).
   OR C. If Seller accepts another offer prior to Buyer's Acceptance of this counter offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Seller *David M. Goodrich, Chapter 7 Trustee for the* Date *6/26/17*
   Seller Date

5. **ACCEPTANCE:** I/WE accept the above Seller Counter Offer (If checked SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Buyer *DEZHONG LI* Date *6/28/17* Time AM/ PM
   Buyer Date Time AM/ PM

**CONFIRMATION OF ACCEPTANCE:**

( / ) (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) at AM/ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.

© 2014, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C A R) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by        Date

SCO 11/14 (PAGE 1 OF 1)

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Neiman Realty 14205 Collins St Sherman Oaks, CA 91401      Phone: (818)516-3779    Fax: (818)785-5925      15521 7th Stre
Jan Neiman        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

18



**CALIFORNIA ASSOCIATION OF REALTORS**

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE)/

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Dezhong Li_ Vezhong Li _____ 05/31/2017 0 47 23 Date _____

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ Remax Titanium _____ BRE Lic. # 01908329
Real Estate Broker (Firm)
By _____ 05/31/2017 0 48 37 BRE Lic. # 01320484 _____ Date _____
(Salesperson or Broker-Associate)   Dave Duong

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

_____   _____   _____   _____
Seller/Landlord          Date          Seller/Landlord          Date

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

AD REVISED 12/14 (PAGE 1 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Re/Max Titanium, 8932 Mission Dr #102 Rosemead, CA 91770          Phone 626-203-5676     Fax 626-243-4835     Jason Li
Dave Duong          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

19

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13 As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes a leasehold or an estate in dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

2079.14 Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

2079.15 In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

(c)   The confirmation required by subdivisions (a) and (b) shall be in the following form.

| (DO NOT COMPLETE, SAMPLE ONLY) | is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller. |
| --- | --- |
| (Name of Listing Agent) | |
| (DO NOT COMPLETE, SAMPLE ONLY) | is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or |
| (Name of Selling Agent if not the same as the Listing Agent) | ☐ both the buyer and seller. |

(d)   The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

2079.18 No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
**REAL ESTATE BUSINESS SERVICES, INC.**
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020
**AD REVISED 12/14 (PAGE 2 OF 2)**

| Reviewed by | Date 6 | 23 | 17 |



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                          Jason Li



**CALIFORNIA ASSOCIATION OF REALTORS®**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 12/15)

Date Prepared: _05/28/2017_

**1. OFFER:**

A. THIS IS AN OFFER FROM _____ _Dezhong Li_ _____ ("Buyer").
   [X] Individual(s), [ ] A Corporation, [ ] A Partnership, [ ] An LLC, [ ] An LLP, or [ ] Other _____

B. THE REAL PROPERTY to be acquired is _____ _15521 7th St_ _____, situated in
   _Victorville_ (City), _San Bernardino_ (County), California, _92395_ (Zip Code), Assessor's Parcel No. _0478-212-19-_ ("Property").

C. THE PURCHASE PRICE offered is _One Hundred Ten Thousand_
   _____ Dollars $ _110,000.00_

D. CLOSE OF ESCROW shall occur on [ ] _____ (date) (or [X] _60_ Days After Acceptance).

E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

A. DISCLOSURE: The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

B. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
   Listing Agent _____ (Print Firm Name) is the agent of (check one)
   [ ] the Seller exclusively; or [ ] both the Buyer and Seller.
   Selling Agent _____ _Remax Titanium_ _____ (Print Firm Name) (if not the same
   as the Listing Agent) is the agent of (check one): [X] the Buyer exclusively; or [ ] the Seller exclusively; or [ ] both the Buyer and Seller.

C. POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

A. INITIAL DEPOSIT: Deposit shall be in the amount of _____ $ _5,000.00_
   (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
   transfer, [ ] cashier's check, [ ] personal check, [ ] other _____ within 3 business days
   after Acceptance (or _____ );
   OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
   to the agent submitting the offer (or to _____ ), made payable to
   _____. The deposit shall be held uncashed until Acceptance and then deposited
   with Escrow Holder within 3 business days after Acceptance (or _____ ).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposit checks received by agent shall be recorded in Broker's trust fund log.)

B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ _____
   within _____ Days After Acceptance (or _____ ).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
   deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
   RID) at the time the increased deposit is delivered to Escrow Holder.

C. [X] ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
   obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer
   or [ ] Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.

D. LOAN(S):
   (1) [ ] FIRST LOAN: in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed
   financing (C.A.R. Form AFA), [ ] subject to financing, [ ] Other _____. This
   loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not
   to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of
   the loan amount.
   (2) [ ] SECOND LOAN in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing
   (C.A.R. Form AFA), [ ] subject to financing, [ ] Other _____. This loan shall be at a fixed
   rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %.
   Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.

E. ADDITIONAL FINANCING TERMS: _____

F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of . . . . . . . . . . . . . . . . . . $ _105,000.00_
   to be deposited with Escrow Holder pursuant to Escrow Holder instructions

G. PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _110,000.00_

H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1))
   shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs.
   ( [ ] Verification attached.)

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )

© 2015, California Association of REALTORS®, Inc.
CPA REVISED 12/15 (PAGE 1 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 11)**

21

Property Address: _15521 7th St, Victorville, CA  92395_                                    Date _May 28, 2017_

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.

J. **LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are not contingencies of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**
Within 21 (or ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 18, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **SALE OF BUYER'S PROPERTY:**

A. This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

5. **ADDENDA AND ADVISORIES:**

A. **ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum # ____ (C.A.R. Form ADM) |
| | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

B. **BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | X Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

6. **OTHER TERMS:** _____

7. **ALLOCATION OF COSTS**

A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

(1) ☐ Buyer X Seller shall pay for a natural hazard zone disclosure report, including tax X environmental ☐ Other _____
prepared by _____

(2) ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

(3) ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer X Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials ( _DL_ ) ( _____ )                                    Seller's Initials ( _DL_ ) ( _____ )

CPA REVISED 12/15 (PAGE 2 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 2 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                James 1:

Property Address: _15521 7th St, Victorville, CA 92395_      Date: _May 28, 2017_

  (2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

    (ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

    (iii) Buyer shall be provided, within the time specified in paragraph 18A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**

  (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee _50/50_

    (b) Escrow Holder shall be _tbd_ _First American Title Co._

    (c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.

  (2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 17E _____

    (b) Owner's title policy to be issued by _tbd_ _____

    (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____

  (2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____

  (3) ☐ Buyer ☐ Seller shall pay Owners' Association ('OA') transfer fee _____

  (4) ☐ Seller shall pay OA fees for preparing all documents required to be delivered by Civil Code §4525.

  (5) ☐ Buyer ☐ Seller shall pay OA fees for preparing all documents other than those required by Civil Code §4525.

  (6) Buyer to pay for any HOA certification fee.

  (7) ☐ Buyer ☒ Seller shall pay for any private transfer fee _if applicable_ _____

  (8) ☐ Buyer ☐ Seller shall pay for _____

  (9) ☐ Buyer ☐ Seller shall pay for _____

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

  **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in paragraph 8 B, C or D.

  **B. ITEMS INCLUDED IN SALE:**

    (1) All EXISTING fixtures and fittings that are attached to the Property;

    (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms.

    (3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 18A.

    (4) Seller represents that all items included in the purchase price are, unless otherwise specified or identified pursuant to 8B(7), owned by Seller. Within the time specified in paragraph 18A, Seller shall give Buyer a list of fixtures not owned by Seller.

    (5) Seller shall deliver title to the personal property by Bill of Sale, free and clear of all liens and encumbrances, and without seller warranty of condition regardless of value.

    (6) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

    (7) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 18A, (i) disclose to Buyer if any item or system specified in paragraph 8B are otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 18B and C.

  **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: _____

  **D. OTHER ITEMS:**

    (1) Existing integrated phone and automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

**9. CLOSING AND POSSESSION:**

  **A. Seller-occupied or vacant property:** Possession shall be delivered to Buyer, (i) ☐ at 6 PM or (_____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days After Close Of Escrow; or (iii) ☐ at ____ ☐ AM/ ☐ PM on _____ .

  **B. Seller Remaining in Possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form CL; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

  **C. Tenant Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

  **D.** At Close Of Escrow: (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale; and (ii) Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

Buyer's Initials ( _DL_ ) ( _____ )        Seller's Initials ( _DL_ ) ( _____ )

CPA REVISED 12/15 (PAGE 3 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

23

Property Address: _15521 7th St, Victorville, CA  92395_            Date: _May 28, 2017_

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

10. **SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

11. **SELLER DISCLOSURES:**

A. **NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 18, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

B. **ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 18, Seller shall Deliver to Buyer, in writing, the following disclosures, documentation and information:

(1) **RENTAL SERVICE AGREEMENTS:** (i) All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any; and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.

(2) **INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

(3) ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

(4) **SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

(5) **PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

(6) **STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

(7) **GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

(8) **VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

(9) **MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: (i) any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; (ii) any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 18A, to avoid required withholding Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law, (C.A.R. Form AS or QS).

D. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

E. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) **SELLER HAS: 7 (or ___ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision.

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the OA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the OA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of OA minutes for regular and special meetings; and (v) the names and contact information of all OAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 18B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to OA or management company to pay for any of the above.

Buyer's Initials ( _DL_ ) ( _____ )            Seller's Initials ( _____ ) ( _____ )



Property Address: _15521 7th St, Victorville, CA 92395_                                                    Date: _May 28, 2017_

12. ☐ **ENVIRONMENTAL SURVEY** (If checked): Within _____ Days After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☐ Seller. Buyer shall then, as specified in paragraph 18, remove this contingency or cancel this Agreement.

13. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly Deliver a subsequent or amended disclosure or notice in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

14. **CHANGES DURING ESCROW:**
   A. Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 14B: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify, or extend any existing rental or lease agreement, (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.
   B. (1) 7 (or ____ ) Days prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of any Proposed Changes.
   (2) Within 5 (or ____ ) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

15. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 18A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 18B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. Buyer is strongly advised to conduct Investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

16. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 18B. Within the time specified in paragraph 18B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; (v) review and seek approval of leases that may need to be assumed by Buyer; and (vi) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing required to prepare a Pest Control Report; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 18B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. Buyer indemnity and seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

17. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 18, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 18B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 18A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )

CPA REVISED 12/15 (PAGE 5 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 11)**

25

Property Address: _15521 7th St, Victorville, CA  92395_                                    Date: _May 28, 2017_

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a standard coverage owners CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

18. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS: 7 (or ___ ) Days After Acceptance** to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5A, 6, 7, 8B(7), 11A, B, C, D and 17A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

B. (1) **BUYER HAS: 17 (or ___ ) Days After Acceptance,** unless otherwise agreed in writing, to:
   (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(7) and any other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property.
   (2) Within the time specified in paragraph 18B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   (3) By the end of the time specified in paragraph 18B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 18A, then Buyer has 5 (or ___ ) Days After Delivery of any such items, or the time specified in paragraph 18B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   (4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 18B(1) and before Seller cancels, if at all, pursuant to paragraph 18C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 18C(1).

C. **SELLER RIGHT TO CANCEL:**
   (1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   (2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a letter as required by paragraph 3J(1); (iii) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; or (iv) In writing assume or accept leases or liens specified in 5B(7); (v) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 25B; or (vi) Provide evidence of authority to sign in a representative capacity as specified in paragraph 23. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

D. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller, and (iii) give the other Party at least 2 (or ___ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 18.

E. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

F. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller, and (ii) give the other Party at least 3 (or _____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

G. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( ___ ) ( ___ )          Seller's Initials ( ___ ) ( ___ )          
CPA REVISED 12/15 (PAGE 6 OF 11)

Property Address: _15521 7th St, Victorville, CA 92395_      Date: _May 28, 2017_

19. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others, (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

20. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 15; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

21. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, OA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

22. **BROKERS:**
    A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
    B. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.
    C. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept: (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

23. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

24. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
    A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10, 11D, 17, 18G, 21, 22A, 23, 24, 30, 38, 39, 41, 42 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 22A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in this Agreement.

Buyer's Initials ( _✗_ ) (    )      Seller's Initials (    ) (    )
CPA REVISED 12/15 (PAGE 7 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Jason Li



Property Address: *15521 7th St, Victorville, CA 92395*                                           Date: *May 28, 2017*

B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days After**
Acceptance (or _____ ). Buyer and Seller authorize Escrow
Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other
purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow
Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received
from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow
Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

C. Brokers a are a party to the escrow for the sole purpose of compensation pursuant to paragraph 22A and paragraph D of the
section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in
paragraph 22A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to
any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the
written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from
Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to
paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all
Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit
with Escrow Holder, or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be
delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

## 25. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-
refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless
the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated
damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or
extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach
this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or
arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED
DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

Buyer's Initials ____/____                                           Seller's Initials ____/____

## 26. DISPUTE RESOLUTION:

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction,
before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www. consumermediation.org) or through
any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with
Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to
the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph
applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement
of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if
they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT
THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

B. **ARBITRATION OF DISPUTES:** The Parties agree that any dispute or claim in Law or equity arising between
them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be
decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with
Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or
claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at
least 5 years of transactional real estate law experience, unless the parties mutually agree to a different
arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure
§1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the
Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court
having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration
Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

   "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING
OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY
NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU
MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE
SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS
THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU
REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE
COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.
YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

   "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT
OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ____/____                                           Seller's Initials ____/____

Buyer's Initials ( ____ ) ( ____ )                                           Seller's Initials ( ____ ) ( ____ )

CPA REVISED 12/15 (PAGE 8 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Property Address: _15521 7th St, Victorville, CA  92395_      Date: _May 28, 2017_

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:
(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.
(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

27. SELECTION OF SERVICE PROVIDERS: Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

28. MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM: If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

29. ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

30. ASSIGNMENT: Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).

31. SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

32. ENVIRONMENTAL HAZARD CONSULTATION: Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

33. AMERICANS WITH DISABILITIES ACT: The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

34. COPIES: Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

35. EQUAL HOUSING OPPORTUNITY: The Property is sold in compliance with federal, state and local anti-discrimination Laws.

36. GOVERNING LAW: This Agreement shall be governed by the Laws of the state of California.

37. TERMS AND CONDITIONS OF OFFER: This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

38. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

39. DEFINITIONS: As used in this Agreement
A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

Buyer's Initials ( ___ ) ( ___ )       Seller's Initials ( ___ ) ( ___ )
CPA REVISED 12/15 (PAGE 9 OF 11)

COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 9 OF 11)

Property Address: <u>15521 7th St, Victorville, CA  92395</u> _____ Date: <u>May 28, 2017</u>

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
D. **"Close Of Escrow"** or **"COE"** means the date the grant deed, or other evidence of transfer of title, is recorded.
E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).
J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

40. **AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, By Laws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

41. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ *Dave Duong* _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [ ] _____ [ ] AM/ [ ] PM, on _____ (date)).

[ ] One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _____ BUYER *Dezhong Li*                                     05/31/2017 0:47:23

(Print name) *Dezhong Li*

Date _____ BUYER _____

(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

42. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

[X] (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED: *J Addendum* .

[ ] One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date *6/26/17* SELLER (_____)

(Print name) _____

Date _____ SELLER _____

(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

{ _____ / _____ } (Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
(Initials)     personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
[ ] AM/ [ ] PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

CPA REVISED 12/15 (PAGE 10 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                     Jason Li

Property Address: <u>15521 7th St, Victorville, CA  92395</u>                    Date: <u>May 28, 2017</u>

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

| | | |
|---|---|---|
| Real Estate Broker (Selling Firm) _Remax Titanium_ | | CalBRE Lic. # _01908329_ |
| By _____ | _Dave Duong_ CalBRE Lic. # _01320484_ | Date _05/31/2017 0 48 37_ |
| By _____ | CalBRE Lic. # _____ | Date _____ |
| Address _8932 Mission Dr #102_ | City _Rosemead_ | State _CA_   Zip _91770_ |
| Telephone _(626)203-5676_   Fax | E-mail _Dave@Teamnuvision.net_ | |
| Real Estate Broker (Listing Firm) _NElMAN REAlty_ | | CalBRE Lic. # _00786172_ |
| By _Jna Nelman_ | CalBRE Lic. # _00680498_ | Date _6-23-17_ |
| By _____ | CalBRE Lic. # _____ | Date _____ |
| Address _14205  Collins  St_ | City _Shelmer OAKS_ | State _CA_ Zip _91401_ |
| Telephone _818 5163779_   Fax | E-mail | |

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ ☐ Seller's Statement of Information and _____ _____ , and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

| | |
|---|---|
| Escrow Holder _____ | Escrow # _____ |
| By _____ | Date _____ |
| Address _____ | |
| Phone/Fax/E-mail _____ | |
| Escrow Holder has the following license number # _____ | |
| ☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate. | |

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
   Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
   Seller's Initials

---

Buyer's Initials ( _DL_ )( _____ )                    Seller's Initials ( _D_ )( _____ )

©2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by
Broker or Designee _____

CPA REVISED 12/15 (PAGE 11 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 11 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Jason Li



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, Buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: (a) Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; (b) Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and (c) other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | | Date 6/26/17 |
| Seller | | Date |
| Buyer Dezhong Li | | Dezhong Li Date |
| Buyer | | Date |
| Real Estate Broker (Firm) | CalBRE Lic # | Date |
| By | CalBRE Lic # | Date |
| | | |
| Real Estate Broker (Firm) Remax Titanium | CalBRE Lic # 01908329 | Date |
| By  05/31/2017 0:48:37 | CalBRE Lic # 01320484 | Date |
| Dave Duong | | |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by | Date |
|---|---|

PRBS 11/14 (PAGE 1 OF 1)

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Re/Max Titanium, 8932 Mission Dr #102 Rosemead, CA 91770          Phone: 626-203-5676          Fax: 626-203-4535          Jason Lu
Dave Duong          Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



**BUYER'S INSPECTION ADVISORY**
(C.A.R. Form BIA, Revised 11/14)

Property Address: _15521 7th St, Victorville, CA  92395_ ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

    **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

    **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

    **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

    **By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _Dezhong Li_    ✓ 05/31/2017 04:47:23      Buyer _____
Dezhong Li

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**BIA REVISED 11/14 (PAGE 1 OF 1)**



**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

Re/Max Titanium, 8932 Mission Dr #102 Rosemead, CA 91770     Phone: 626-203-5676    Fax: 626-243-4835    Jason Li
Dave Duong     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

## SELLER'S ADDENDUM RE
## SALE OF REAL ESTATE BY CHAPTER 7 TRUSTEE

Additional Terms to Purchase Agreement
15521 7th Street, Victorville, California 92395 [APN 0478-212-919]

The following terms supplement, amend, and, in the case of a conflict, supersede the terms of the *Commercial Property Purchase Agreement And Joint Escrow Instructions And Seller Counter Offer No 1* executed by and between David M. Goodrich ("Trustee"), on the one hand, and Dezhona Li ("Buyer"), on the other hand, relating to the purchase and sale of the real property commonly described as 15521 7th Street, Victorville, California 92395 [APN 0478-212-919] ("Property"). The Purchase Agreement shall be referred to herein as the "Agreement."

1.      Effect of Bankruptcy Case. The Trustee and the Buyer expressly acknowledge and agree that: (i) on June 26, 2016 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code"), thereby commencing the bankruptcy case *S & S Real Property Holdings, LLC*, Case No. 2:16-bk-18751-BR ("Bankruptcy Case"), pending in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court"); (ii) upon the commencement of the Bankruptcy Case, a bankruptcy estate ("Estate") was created which holds all legal and equitable interests of the Debtor in property as of the Petition Date; (iii) David M. Goodrich ("Trustee" or "Seller") was appointed as the Chapter 7 trustee of the Estate; and (iv) the Property is property of the Estate, subject to the exclusive control and disposition of the Trustee in accordance with the Bankruptcy Code.

2.      Trustee as Seller. The Trustee is the only person vested with the right to sell the Property under the Agreement and, accordingly, all references to "Seller" in the Purchase Agreement and this Addendum shall refer exclusively to the Trustee.

3.      Controlling Terms. To the extent that terms of the Purchase Agreement conflict with this Addendum, this Addendum controls, and any such conflicting terms in the Purchase Agreement ("Conflicting Terms") are not binding and are hereby superseded. Any such Conflicting Term is identified or specified herein as being superseded or replaced.

4.      Purchase Price. The purchase price for the Property shall be $113,000.00 ("Purchase Price").

5.      Escrow, Escrow Fees, Title, Title Insurance, Hazard Zone Disclosure Report, and Other Reports. Escrow services shall be performed by Neiman Realty. Title services shall be performed by First American Title Co. Should Buyer desire a natural hazard zone disclosure report, Buyer shall pay for the cost of a natural hazard zone disclosure report prepared by a company of Buyer's choice. Except as otherwise set forth herein, Buyer shall bear the expense of any report or inspection.

6.      Transfer Tax. Seller shall pay any applicable County and/or City transfer tax(es).

7.      Insurance. The Buyer shall, at its own expense, acquire any and all insurance policies that the Buyer desires to cover the Property. The Seller does not agree to acquire or transfer any insurance policies to the Buyer.

ALS\2589149.1

34

8.    Financing. The Buyer shall have procured any and all necessary financing to acquire the Property before the close of escrow.

9.    Government Requirements and Retrofit. The Buyer shall, at his/her/its own expense, pay for the cost of compliance with any minimum mandatory retrofit standards, inspections and reports as may be required by state and/or local law. The Seller is not required to deliver to the Buyer a written statement of compliance with any applicable state and local law.

10.    Energy Conservation. If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the Buyer shall, at his/her/its own expense, comply with and pay for these requirements.

11.    **No Representations or Warranties – "As-Is"/"Where-Is"; Transfer of Title. Buyer acknowledges that Seller is a trustee appointed to administer a bankruptcy estate and, particularly, the bankruptcy estate of S & S Real Property Holdings, LLC in the Bankruptcy Case. Buyer acknowledges and agrees that Seller has not made, does not make, and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to the Property. The Buyer further acknowledges and agrees that to the maximum extent permitted by law, the sale of the Property as provided for herein ("Sale") is made on an "as-is"/"where-is" basis with all faults, without any representations or warranties whatsoever by the Seller, and that Seller has no obligations to make repairs, replacements or improvements except as may otherwise be expressly stated herein.** Seller and Seller's agents have not, and will not, inspect the Property or determine its condition, fitness or use for any particular purposes, nor will any of them provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agents are exempt from complying with the requirements of Article 1.5 of the California Civil Code Sections 1102-1102.17 relating to disclosures upon transfer of real property. In any state or local ordinance laws require that the Property be brought into compliance, the Buyer, at his/her/its sole expense, shall comply with and pay for any such requirements. Transfer of the Property by Seller shall be by Trustee Deed, Quitclaim Deed or Grant Deed, at Seller's choice.

Buyer's Initials: _DL_ / _____

12.    Encumbrances. Title to the Property is to be transferred to the Buyer free and clear of secured claims of record; however, the Property shall be sold subject to: (1) all general and special taxes that are presently due, or may become due, regarding the Property, other than real property taxes, which shall be prorated at the close of escrow; (2) any lien for supplemental taxes that may be assessed pursuant to Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code; and (3) any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.

13.    Qualification Regarding Seller Documentation. The Seller is not the owner, but rather a duly appointed and acting chapter 7 bankruptcy trustee and shall only be responsible for providing such documentation as may be in his possession.

14.    Bankruptcy Court Approval and Stay. The Buyer acknowledges that the sale of the Property is subject to Bankruptcy Court approval, and that any Bankruptcy Court order

approving the sale of the Property ("Sale Order") may be subject to a fourteen (14) day waiting period after entry of the order for escrow to close. Approval of the sale will be sought by way of a motion ("Sale Motion") to be prepared and filed by the Seller. Buyer further understands and agrees that the obligation of the Seller to proceed with the transaction represented by the Agreement is conditioned on the ability of the Seller to obtain an order from the Bankruptcy Court that the sale is free and clear of liens. As part of the Sale Motion, Seller shall request a finding of the Buyer's "good faith" in accordance with section 363(m) of the Bankruptcy Code. Should the Bankruptcy Court fail to issue an order with terms and conditions satisfactory to the Seller, Seller has the right to unilaterally terminate the Agreement and Buyer's exclusive remedy is the return of any monies deposited with or given to the Seller or his agents, or placed into escrow by him/her/them or on his/her/their behalf/ves in conjunction with the sale of the Property, and Buyer expressly waives any and all other rights, remedies, recourse or damages against Seller or the Estate.

15.    Overbid. The Sale shall be subject to overbid at the time of the Bankruptcy Court hearing(s) at which the Bankruptcy Court considers approval of the sale. The Buyer acknowledges that its purchase of the Property at the price stated in the Agreement is contingent upon there being no higher and better bids presented and accepted at the hearing. The Seller has sole and absolute discretion in determining the amount of all initial and incremental bids utilized in the overbid process. The Buyer expressly agrees that it will not oppose, object to or seek to modify any of the overbid procedures which Seller proposes to the Bankruptcy Court for approval in connection with the Sale.

16.    Dispute Resolution. Paragraph 26 of the Purchase Agreement is replaced with the following: Any and all disputes in connection with the Purchase Agreement, this Addendum and/or any Sale pursuant thereto are subject to the exclusive jurisdiction and venue of the Los Angeles Division of the United States Bankruptcy Court for the Central District of California in the Bankruptcy Case. The Bankruptcy Court shall have exclusive jurisdiction and authority to interpret any enforce the terms of the Agreement. The Agreement shall be construed pursuant to the laws of the State of California, except to the extent preempted by applicable Federal bankruptcy law.

17.    Effect of Infeasible or Unprofitable Sale. To the extent that liens, claims, encumbrances or other interests against the Property, if any, or any event, makes the sale infeasible or unprofitable to the Estate, the Seller may cancel any proposed sale under this Agreement. In such case, the Buyer agrees to fully and completely release Seller from any and all obligations under this Agreement. In addition, any escrow shall be cancelled.

18.    Termination and Effect. In the event that the escrow for the Sale to the Buyer does not close for any reason other than Buyer's default (including, but not limited to, termination of the Agreement by the Seller, a loss of the Seller's interest in the Property prior to the sale, disapproval of the Sale by the Bankruptcy Court, or the Seller's receipt of a higher or better offer for the Property at the time of the Bankruptcy Court hearing at which the Bankruptcy Court considers approval of the Sale), the Agreement shall automatically terminate (if it has not already been terminated) and, in that event, Buyer fully and completely releases Seller from any and all obligations under the Agreement, and escrow shall be cancelled. The Buyer understands that in such event, Buyer's exclusive remedy is the return of any monies deposited with or given to the Seller or his agents, or placed into escrow by him/her/them or on his/her/their behalf/ves in conjunction with the Sale of the Property, as set forth in paragraph 15 above (except that, in the

event that Buyer elects to serve as a "backup bidder," any deposit(s) made by Buyer shall not be returned unless and until the sale of the Property to the winning bidder closes).

19.     Due Diligence, Initial Deposit and Liquidated Damages; Forfeiture of Initial Deposit. Within seven (7) calendar days after execution of this Addendum, Buyer shall deposit, in good funds, the sum with escrow ("Initial Deposit"). Buyer shall have fourteen (14) calendar days from the date of execution of this Addendum to conduct any and all due diligence relating to the Property ("Due Diligence Deadline"). By no later than the Due Diligence Deadline, Buyer may advise the Seller, in writing, of his/her/its election to cancel the Sale ("Notice to Cancel"), in which case Buyer shall receive a full refund of the Initial Deposit. Absent Buyer's submission of a Notice to Cancel in accordance with this paragraph 20, the Sale shall be without any further contingencies or due diligence requirements of Buyer. **Without limiting the generality of the foregoing, Buyer's silence shall be deemed an acceptance and affirmative election to proceed with the Sale without any further contingencies or due diligence requirements. Buyer understands that, immediately upon expiration of the Due Diligence Deadline, absent written notice from Buyer to Seller of the cancellation of the Agreement, the Initial Deposit shall be deemed nonrefundable and should the Buyer fail to consummate the sale or purchase of the Property, the Initial Deposit shall be completely and absolutely forfeited to Seller on behalf of the Estate, and Seller shall retain the Initial Deposit as liquidated damages for such failure. Buyer and Seller acknowledge that the Initial Deposit represents a fair and reasonable estimation of the damages Seller would suffer in the event Buyer fails to consummate the Sale in accordance with the Agreement. The Initial Deposit shall be refundable only in the event of the following: (i) the Bankruptcy Court does not approve the Sale; (ii) Buyer is not the winning bidder at the Bankruptcy Court hearing for approval of the Sale and also is not a "backup bidder," or (iii) Seller is unable to transfer marketable title within thirty (30) days of the Sale Order becoming a final order (or such other later date as the parties may agree).**

Buyer's Initials:  _D L_  /_____

20.     Tender of Balance of Purchase Price/Closing. The Sale shall close, with Buyer tendering the full Purchase Price, not more than fourteen (14) calendar days after entry of the Sale Order ("Closing Date"), unless Buyer and Seller mutually agree in writing to extend the Closing Date. In the event that the fourteenth (14th) calendar day following entry of the Sale Order is a weekend or legal holiday, the Closing Date shall be the next business day. Should Buyer fail to consummate the Sale by the Closing Date, Seller shall have the option to sell the Property to any "backup bidder" as set forth in any Sale Order.

21.     Multiple Offers: Buyer recognizes that multiple offers and/or counteroffers (in addition to the instant Addendum) may be pending and Seller reserves the right to choose which contract to submit to the Bankruptcy Court for approval.

22.     Binding Effect. This Addendum shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

23.     Entire Agreement. The Agreement, comprised of the Purchase Agreement and this Addendum, contains the entire agreement between Seller and Buyer with respect to the matters addressed in the Agreement, and supersedes all prior agreements or addenda, whether written or oral.

24.    Severance of Provisions.  If one or more provisions of this Addendum are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, and the spirit and intent of this Addendum may be maintained, then (a) such provision shall be excluded from this Addendum, (b) the balance of this Addendum shall be interpreted as if such provision were so excluded and (c) the balance of this Addendum shall be enforceable in accordance with its terms.  As necessary, either of the parties hereto may seek such appropriate relief from the Bankruptcy Court.

25.    Counterpart Execution.  This Addendum may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. Delivery of an executed counterpart of this Addendum by fax or electronic mail shall be equally as effective as delivery of an executed hard copy of the same.  Any party doing so shall also deliver an executed hard copy of same, but the failure by such party to deliver an executed hard copy shall not affect the validity, enforceability and binding effect of this Addendum.

**SELLER**

DATED: June 26, 2017                    By: _____

David M. Goodrich
Chapter 7 Trustee of the Bankruptcy Estate of
S & S Real Property Holdings, LLC

**BUYER**

DATED: June 26, 2017                    _____

Dezhona Li
Buyer

ALS\ 2589149.1

38

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California  90071-1406.

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:  (1) AUTHORIZING SALE OF 15521 7th STREET, VICTORVILLE, CALIFORNIA  92395, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; (2) APPROVING PROPOSED OVERBID PROCEDURES; (3) DETERMINING THAT BUYER IS A GOOD FAITH PURCHASER; (4) AUTHORIZING PAYMENT OF COSTS OF SALE FROM ESCROW; AND (5) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID M. GOODRICH, DEZHONG LI, AND JAN NEIMAN OF NEIMAN REALTY, INC. IN SUPPORT THEREOF**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 10, 2017 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Lazaro E. Fernandez:  lef17@pacbell.net; lef-karina@pacbell.net; lef-mari@pacbell.net; lefkarina@gmail.com
David M. Goodrich (TR):  GoodrichTrustee@sulmeyerlaw.com; c143@ecfcbis.com
Neil R. Hedtke:  hedtkelg@gmail.com; hedtkeecf@gmail.com; r42667@notify.bestcase.com
United States Trustee (LA):  ustpregion16.la.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**:
On July 10, 2017 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
United States Bankruptcy Court
Roybal Federal Building
255 East Temple Street, Suite
Los Angeles, CA 90012

Martin Murillo
c/o IE Business Solutions Foreclosures
Attn: Ann Ector, Foreclosure Office
3281 East Guasti Road
7th Floor
Ontario, CA 91761-7643

Peter Sayers
14175 Hopi Road
Apple Valley, CA 92307-5716

San Bernardino Tax Collector
268 West Hospitality Lane
First Floor
San Bernardino, CA 92415-0360

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 10, 2017 | Ann L. Sokolowski | /s/ Ann L. Sokolowski |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |